# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| WESLEY D. PURDY,<br><br>　　　Plaintiff,<br><br>vs.<br><br>AEGIS WHOLESALE CORP., et al.,<br><br>　　　Defendants. | Civil No. 1:11-cv-00640-EJL-REB<br><br>**ORDER RE: DEFENDANTS' MOTION FOR JUDICIAL NOTICE (Dkt. 13) and PLAINTIFF'S MOTION FOR JUDICIAL NOTICE (Dkt. 15)**<br><br>**and**<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS (Dkt. 12)** |

Pending before the Court are Defendants' Motion to Dismiss (Dkt. 12) and a related Motion for Judicial Notice (Dkt. 13) and Plaintiff's Motion for Judicial Notice (Dkt. 15). Neither party has objected to the opposing party's motion for judicial notice and the items each party asks the Court to take judicial notice of are appropriate documents for judicial notice; thus, those documents will be considered by the Court in ruling on the pending Motion to Dismiss.[1]

Additionally, with regard to the Motion to Dismiss, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument; accordingly, the motions will be decided on the record before this Court without oral argument. D. Idaho L. Civ. Rule 7.1(d). Having carefully reviewed the record, and otherwise being fully advised, the Court hereby enters the following Order, Report, and Recommendation.

---

[1] *See* Fed. R. Evid. 201(b); *Quan v. Gonzales*, 428 F.3d 883, 891 (9th Cir. 2005); *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004).

**ORDER, REPORT, AND RECOMMENDATION - 1**

## I.  BACKGROUND

Plaintiff Wesley Purdy ("Purdy") initially filed this case in state court seeking to quiet title to property located at 217 Kingsbury Lane in Blaine County, Idaho (the "Property").  The case was removed to this Court on December 16, 2011 by Mortgage Electronic Registration Systems, Inc. ("MERS"), Countrywide Home Loans, Inc. ("CHL"), Bank of America, N.A. ("BANA"), The Bank of New York Mellon fka The Bank of New York, as Trustee for the Benefit of the Certificate holders of the CWALT Inc., Alternative Loan Trust 2005-4, Mortgage Pass-Through Certificates, Series 2005-4 ("BONY"), and ReconTrust Company, N.A. ("ReconTrust") (collectively "Defendants").  Purdy then filed a First Amended Complaint alleging the following three causes of action related to non-judicial foreclosure action taken on the Deed of Trust securing a note on the Property: (1) Quiet Title, (2) Violation of the Fair Debt Collection Practices Act ("FDCPA"), and (3) Declaratory Judgment.

Purdy initially financed his purchase of the Property on July 8, 2005 with a $481,250.00 mortgage loan ("first mortgage") from Aegis Wholesale Corporation.  Compl.[2] ¶ 14 (Dkt. 8); *Dina Aff.,* Ex. A (Dkt. 13-1).  The first mortgage was memorialized in a promissory note ("Note") and secured by a first Deed of Trust naming Aegis Wholesale Corporation as the lender, First American Title Company, Inc. ("First American") as the trustee, and MERS as the

---

[2]  The Complaint referred to throughout this document is the First Amended Complaint filed at docket number 8.

**ORDER, REPORT, AND RECOMMENDATION - 2**

beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns."[3]
Compl. ¶ 14, *Dina Aff.,* Ex. B.

On August 22, 2011, MERS assigned its interest in the Deed of Trust to BONY by way of

a Corporation Assignment of Deed of Trust and BONY then appointed ReconTrust as successor

trustee.  Dina Aff., Exs. E & F.  Although the Corporation Assignment from MERS to BONY

stated that the Deed of Trust was being assigned "together with the notes or notes therein

described," Defendants acknowledge that the note securing the first mortgage was transferred to

BONY in a separate transaction.  Defs.' Mem., p. 4 (Dkt. 12-2).  There are no documents in the

record evincing a transfer of the Note to BONY.  The record does contain an "Allonge to Note"

in which Aegis Wholesale Corporation endorsed the Note to Aegis Mortgage Corporation, and

Aegis Mortgage Corporation endorsed the Note in general, without naming the entity entitled to

payment on the Note (*i.e.*, a blank endorsement).[4]  Dina Aff., Ex. A (Dkt. 13-2).  The Note also

states that "Lender may transfer this Note" and "anyone who takes this Note by transfer and who

is entitled to receive payments under this Note is called the 'Note Holder.'"  *Id.*, Ex. A, ¶ 1.

On the same day MERS assigned its interest in the Deed of Trust to BONY, August 22,

2011, ReconTrust issued a Notice of Default, recording the Notice on August 23, 2011.  Compl.

_____

[3]  On July 26, 2005, Purdy also obtained a Home Equity Line of Credit ("HELOC") for
the Property in the amount of $145,000.00 from Aegis Home Equity ("Aegis Funding").  Compl.
¶ 15.  The HELOC Deed of Trust named Aegis Funding as the lender, First American as the
trustee, and MERS as the beneficiary, but this Deed of Trust is not at issue in the present
proceedings.  *Dina Aff.*, Ex. C.

[4]  Defendants' counsel averred that she obtained the records submitted in her affidavit
*from Defendants*.  Dina Aff., ¶ 3.  Neither of the Aegis entities is named as a defendant in this
case.

**ORDER, REPORT, AND RECOMMENDATION - 3**

¶ 18; *Dina Aff.,* Ex. G.  The Notice of Default stated that Plaintiff's account had been in arrears since May 1, 2010 and that, as of August 22, 2011, Purdy owed $46,739.44.  *Dina Aff.*, Ex. G.

On August 29, 2011, ReconTrust caused a Notice of Trustee's Sale to be issued, scheduling the sale of the Property for January 3, 2012.  *Dina Aff.*, Ex. H.  Nothing in the record before the Court indicates that a foreclosure sale has occurred, despite the notice.

## II.  REPORT

### A.    Legal Standard for Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*. at 557.

**ORDER, REPORT, AND RECOMMENDATION - 4**

In a more recent case, the Supreme Court identified two "working principles" that underlie the decision in *Twombly*.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *See id*.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id*. at 678-79.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id*. at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.

Providing too much in the complaint may also be fatal to a plaintiff.  Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery.  *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts.").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after *Iqbal*).[5]  The Ninth Circuit has held that "in dismissals

---

[5]  The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting, in part, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim . . . ."  Given *Twombly* and *Iqbal's* rejection of the liberal pleading standards adopted by *Conley*, a question arises whether the liberal amendment policy of *Harris v. Amgen* still exists.  Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*.  *See, e.g., Market Trading, Inc. v. AT&T*

for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2008) (citations omitted).

**B.      Defendants Have Standing to Pursue a Motion to Dismiss in this Case and to Initiate a Non-Judicial Foreclosure**

Purdy alleges that the foreclosure action was initiated at a time when none of the Defendants owned or held the Note.[6] Compl., ¶ 20 (Dkt. 8). Therefore, Purdy argues, none of the Defendants has "standing" to bring a motion to dismiss. Pl.'s Opp'n, p. 7 (Dkt. 14). The Court is not persuaded.

First, to the extent Purdy relies on the standing required for a lender to file a foreclosure action in court, that is not this case. Rather, this case involves Purdy challenging a non-judicial foreclosure and he selected the entities to name as defendants.[7]

Second, to the extent Purdy argues that none of the Defendants is a "real party in interest," the Idaho Supreme Court recently rejected such a claim based on the same federal

---

*Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication). Accordingly, the Court will continue to employ the liberal amendment policy.

[6] Purdy also argues that "because the Note is a blank indorsement and not specially indorsed to any of the Bank Defendants, in order to enforce the Note, they have to show possession." Pls.' Opp'n Br., p. 14 (Dkt. 14). The issue here is not enforcement of the Note, but whether the foreclosure action was properly initiated under Idaho's statutory scheme.

[7] The case cited by Purdy, *Deutsche Bank National Trust Co. v. Byrams*, 2012 WL 130661 (Okla. 2012) involves standing to seek foreclosure in an Oklahoma court. For that reason, the portions of the case Purdy relies on are not persuasive to the Court here.

**ORDER, REPORT, AND RECOMMENDATION - 6**

bankruptcy case cited by Purdy (*In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho 2009)), noting that the *Wilhelm* case involved standing in bankruptcy proceedings.  *Trotter v. Bank of New York Mellon*, 275 P.3d 857, 863 (Idaho 2012).   This is not a bankruptcy case and the standing required to participate in that type of federal case is not at issue here.[8]

More significantly, after Purdy submitted his response brief opposing the motion to dismiss, the Idaho Supreme Court held, as a matter of first impression in Idaho, that a trustee is not required to prove it has standing before foreclosing on a deed of trust under the Idaho Deed of Trust Act ("the Act"), Idaho Code §§ 45-1502–1515.[9]  *Trotter*, 275 P.3d 857.  So long as the trustee complies with Idaho Code Sections 45-1505 and 45-1506, property may be foreclosed upon in Idaho.  *Trotter*, 275 P.3d 857.  Significantly, the Deed of Trust Act does not require the trustee to produce the promissory note that was executed along with the deed of trust in order to initiate non-judicial foreclosure proceedings; rather, "a trustee may initiate non-judicial foreclosure proceedings on a deed of trust without first proving ownership of the underlying note.

---

[8]  Bankruptcy case standing principles are generally inapplicable to state foreclosure law, because a creditor with a claim against a bankruptcy estate must establish a pecuniary interest in the case, meaning the right to payment under the note, before the creditor may obtain stay relief. *In re Sheridan*, 2009 WL 631355 (Bankr. D. Idaho 2009).  In contrast, before a non-judicial foreclosure may take place by notice and sale, the trustee must simply comply with Idaho Code § 45-1505.  *Washburn v. Bank of America, N.A.*, 2011 WL 7053617 *7 n.16 (D. Idaho Oct. 21, 2011).

[9]  When "interpreting state law, federal courts are bound by decisions of the state's highest court."  *Arizona Elec. Power Co-op, Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). Although "standing" is not usually an issue of state law, the interpretation of a state statute is. The Court has found no applicable federal authority limiting on the basis of standing the ability of Defendants to make the arguments they submitted in support of the requested dismissal.  The *Trotter* decision provides authority for Defendants' standing to initiate a trust deed foreclosure under Idaho's statute and Defendants are entitled to defend against Purdy's action.

**ORDER, REPORT, AND RECOMMENDATION - 7**

. ." *Id.* at 862.  The decision in *Trotter* not only disposes of Purdy's standing argument, but also disposes of his argument that "Idaho law requires the person foreclosing be the one entitled to enforce the obligation that the deed of trust secures[,]" *i.e.*, the Note.  Pls.' Opp'n, p. 11 (Dkt. 14).[10]

Finally, Purdy's argument that provisions of the Uniform Commercial Code in Idaho requires Defendants to hold the note to initiate non-judicial foreclosure proceedings, also is undone by the holding in *Trotter.  See also Spencer v. Jameson*, 211 P.3d 106 (Idaho 2009) (recognizing the "comprehensive regulatory scheme for non-judicial foreclosure of deeds of trust").  The power to conduct a trustee's sale granted by the Deed of Trust is not the same as enforcing a security instrument under the UCC, and there is no requirement under Idaho law for the production of the note prior to foreclosing upon the property.  Other jurisdictions have ruled similarly.[11]  Accordingly, because there is no duty to possess the note to initiate foreclosure proceedings under the Act, Purdy fails to state a claim upon which relief may be granted.  For this reason, Purdy's standing arguments and his assertion that "Idaho law requires the person

---

[10]  In making this argument, Purdy again cites to bankruptcy cases, the Idaho Uniform Commercial Code, and a case from the Oklahoma Supreme Court, *Deutsche Bank Nat'l Trust Co. v. Byrams*, ___ P.3. ___, 2012 WL 130661 (Okla. 2012).  As discussed in this section, none of these authorities trumps the *Trotter* holding from the Idaho Supreme Court, or outweighs the persuasion of other decisions from this District finding otherwise.  The same is true with respect to Purdy's argument that the Bank Defendants "cannot show a present right to possession of Purdy's property in order to foreclose."  Pls.' Opp'n, p. 15 (Dkt. 14).  Idaho's Deed of Trust Act does not require a showing of present right to possession in order to foreclose on a trust deed.

[11]  *See, e.g.*, *Diessner v. Mortgage Elec. Reg. Sys*., 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009) (noting that the absence of any controlling authority providing that the cited Arizona U.C.C. section applies in non-judicial foreclosure proceedings); *Wayne v. HomEq Serv., Inc.*, 2008 WL 4642595, *3 (D. Nev. Oct. 16, 2008) (explaining that "[c]ourts across the country have rejected claims by plaintiffs asserting a duty by the lender to provide the original note under the U.C.C. to prove its holder in due course status").

**ORDER, REPORT, AND RECOMMENDATION - 8**

foreclosing to be the one entitled to enforce the obligation that the deed of trust secures" should be rejected.  *See* Pls.' Opp'n Br., p. 11 (Dkt. 14).

**C.     Purdy is Not Entitled to Quiet Title**

Purdy alleges that none of the Defendants has a valid claim or interest in the Property because (1) there were defects in the transfers of the notes and deeds of trust, (2) there was a split in ownership of the notes and deeds of trust, (3) there was a lack of proper recording of required documents of title, (4) there were defects in the execution of the notes and deeds of trust; (5) the notes were securitized, (6) the notes were satisfied by third parties or entities, by federal relief, by tax credits, or otherwise, and (7) violations of the law rendered the documents void.  In Purdy's response to the motion to dismiss he focuses on what he alleges are defects in the foreclosure documents that prevent the foreclosure from proceeding.  Pls.' Opp'n, p. 17 (Dkt. 14).

Purdy's claims in this regard have no starting point, because he has failed to plead tender. His remedy to quiet title is unavailable to him for other reasons as well.

*1.     Failure to Plead Tender Precludes the Remedy of Quiet Title*

In Idaho, a quiet title "action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim."  Idaho Code § 6-401.  The "purpose of a quiet title action is to establish the security of title."  *Roselle v. Heirs and Devisees of Grover*, 789 P.2d 526, 529 (Idaho Ct. App. 1990).

However, a "mortgagor cannot without paying his debt quiet title as against the mortgagee."  *Trusty v. Ray*, 249 P.2d 814, 817 (Idaho 1952).  This is true even where the

**ORDER, REPORT, AND RECOMMENDATION - 9**

mortgagee has failed to pursue a foreclosure action within the applicable statute of limitations. *Id.*; *see also In re Mullen*, 402 B.R. 353, 358 (Bankr. D. Idaho 2008).  Purdy does not allege that he tendered payment of his debt obligation.  Without evidence, or even an assertion that Purdy can or is willing to tender payment on his loan, he cannot succeed on his quiet title action as a matter of law.  *See Cherian v. Countywide Home Loans, Inc.*, 2012 WL 2865979, *2 (D. Idaho 2012) (citing *Hobson v. Wells Fargo Bank, N.A.,* 2012 WL 505917, *3 (D. Idaho 2012) (quoting *Trusty*, 249 P.2d at 817)).

Purdy argues that he is not required to allege tender because the *Trusty* case does not apply when the alleged creditor has not shown its ownership of the obligation and no Defendant has provided documents showing ownership, title, or interest in the Note.  Pl.'s Opp'n, p. 10-11 (Dkt. 14).  However, "[e]ven assuming some yet unknown entity is the true Note Holder entitled to receive payments, the fact that the entity is unknown is not a cloud on the title[;] [r]ather, the security instrument itself is the cloud upon [Plaintiff's] title."  *Bacon v. Countrywide Bank FSB*, No. 2:11-cv-00107-EJL-CWD, 2012 WL 642658, *7 (D. Idaho Feb. 8, 2012) (citing *Power & Irrigation Co. of Clear Lake v. Capay Ditch Co.*, 226 F. 634, 639 (9th Cir. 1915) (explaining that the deed, which operates as mortgage, constitutes cloud on title)).[12]  For all of these reasons, it is recommended that the District Court apply the holding in the *Trusty* case, consistently with its decision in *Bacon* and with the decisions of other judges in the District of Idaho upon similar

---

[12]  *See also Bacon*, 2012 WL 642658, *7 ("Unless and until the Note Holder fails to produce clear title and a warranty deed upon tender, [plaintiff] may not fail to comply on [his] part with the provisions of the Note requiring payment.") (citing *Rischar v. Shields Et. Ux.*, 145 P. 294, 295 (Idaho 1914) (holding that purchasers of land could not refuse to tender payments on grounds that seller did not have clear title; purchasers had to tender purchase price, and could only maintain an action for damages if, at that time, seller could not produce clear title)).

**ORDER, REPORT, AND RECOMMENDATION - 10**

cases.  As a recent decision from this District explained, "'[t]his Court is not in a position to award [plaintiffs] a windfall.'"  *Cherian*, 2012 WL 2865979 at *2 (quoting *Kham v. Executive Trustee Servs, LLC*, 2012 WL 967864, *15 (E.D. Cal. 2012)).

> 2.   *Securitization the Note Does Not Extinguish the Security Interest or Otherwise Impact the Ability to Foreclose on the Deed of Trust*

Purdy alleges that securitization of the Note impacts the right to foreclose.  Such a theory has been considered in multiple jurisdictions, which have rejected the argument that "securitization of a loan somehow diminishes the underlying power of sale that can be exercised upon a trustor's breach."  *West v. Bank of America*, 2011 WL 2491295, *2 (D. Nev. 2011); *see also Washburn v. Bank of America*, 2011 WL 7053617, *4-5 (D. Idaho 2011) (citing *Beyer v. Bank of America*, 800 F. Supp. 2d 1157 (D. Or. 2011) (rejecting argument that trust deed is void when separated from promissory note); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039 (N.D. Cal. 2009) (rejecting plaintiff's theory that defendants "lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool"); *Chavez v. California Reconveyance Co.*, 2010 WL 2545006 (D. Nev. 2010) ("The alleged securitization of Plaintiffs' Loan did not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course.")); and, in the District of Idaho, *Cherian v. Countywide Home Loans, Inc.*, 2012 WL 2865979, *4 (D. Idaho 2012).

Further, the Ninth Circuit, in explaining that MERS is an electronic database that tracks the transfers of the beneficial interest in home loans, held that use of the MERS system does not eliminate a party's right to foreclose – even if one accepts the premise that use of MERS splits

**ORDER, REPORT, AND RECOMMENDATION - 11**

the note from the deed.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011).  Nothing in Purdy's Complaint or opposition to Defendants' Motion to Dismiss persuades this Court to depart from the reasoning in these decisions.

Moreover, from a more practical standpoint, no matter which entity is actually instituting foreclosure proceedings, only one entity is doing so, and Purdy does not deny that he is in default under the loan documents.  In short, "[s]ecuritization of the loan does not discharge Plaintiff's clear contractual obligation to repay the loan."  *Cherian*, 2012 2865979 at *3.

   3.   *Title and Assignment Documents Were Recorded in Compliance with Idaho's Foreclosure Statutes*

Purdy has alleged that Defendants failed to comply with Idaho's foreclosure statutes through miscellaneous "defects in the foreclosure documents."  Pls.' Opp'n, p. 17 (Dkt. 14). Idaho Code Section 45-1505(1) provides that: "[t]he trustee may foreclose a trust deed... if:  The trust deed, any assignments of the trust deed by the beneficiary, and any appointments of successor trustee are recorded in mortgage records ...."  Both a Corporate Assignment of Deed of Trust and the Appointment of a Successor Trustee were recorded on August 23, 2011.  *See* Dina Aff., Exs. E &F.  Where the record is bare as to any support for Purdy's assertions, his claim cannot move forward.  *See Cherian*, 2012 WL 2865979 at *3 & *6 (rejecting similar arguments).

Purdy's brief comments about "robo-signing" and "problems with notarization" are based largely on "national publicity".  Pls.' Opp'n, p. 18 (Dkt. 14).  To the extent Purdy's robo-signing argument challenges the affidavits executed in relation to the foreclosure service/filings in this case (*see* Dina Aff., Ex. G), the Court finds the allegations and arguments are conclusory and there is no support for challenging the affidavit because of the location of the workplace of the "server" and the "notary public," in relation to when and where they filed the affidavit.  Although

**ORDER, REPORT, AND RECOMMENDATION - 12**

Purdy alludes to a possible defect in the actions of the notary public, and requests that the Court draw an adverse inference from it, he does not claim that the questioned documents contain false information. *See, e.g.*, *Cerecedes v. U.S. Bankcorp*, 2011 WL 2711071, *5 (C.D. Cal. 2011) (in dismissing plaintiffs' second amended complaint with prejudice, commenting that "[t]he Court is mindful of the reports of financial institutions using so-called 'robo-signers' to improperly sign documents used in the foreclosure process.  However, Rule 9(b) and *Twombly* require plaintiffs to set forth more than bare allegations of 'robo-signing' without any other factual support. Perhaps more importantly, plaintiffs do not dispute that they defaulted on their loan or that they received the notices required by [state law].") (internal citations omitted) (unpublished) (citing *Orzoff v. Bank of America, N.A.*, 2011 WL 1539897, *2-3 (D. Nev. 2011) (holding that plaintiff failed to state a claim that trustee breached its duty by "robosigning" documents related to plaintiff's loan where plaintiff did not dispute that she defaulted on her mortgage or that she received required notices.); *Bucy v. Aurora Loan Servs., LLC*, 2011 WL 1044045, *6 (S.D. Ohio 2011) (plaintiff failed to state a claim for fraud based on purported "robo-signing" where "Plaintiff d[id] not dispute the accuracy of any of the salient facts, such as the amount owed or the amount in default.")).  Simply put, Purdy has not alleged any relevant fact with the requisite level of particularity to demonstrate that Defendants did not properly record title and assignment documents in compliance with Idaho's statutes.

For all of the above-referenced reasons, it is hereby recommended that Defendants' Motion to Dismiss be granted.

**ORDER, REPORT, AND RECOMMENDATION - 13**

**D.** **FDCPA**

The FDCPA provides that a "debt collector may not use unfair or unconscionable means

to collect or attempt to collect any debt," including, among other things, "[t]aking or threatening

to take any nonjudicial action to effect dispossession of disablement of property if (A) there is no

present right to possession of the property claimed as collateral through an enforceable security

interest." 15 U.S.C. § 1692f(6)(A). Purdy relies on this subsection for his FDCPA claim,

asserting that Aegis Corporation is the holder of the Note and thus is "the only entity entitled to

foreclose and dispossess Purdy of his property."[13] Pls.' Opp'n, p. 16 (Dkt. 14). This type of

claim has made it past the dismissal stage in other cases. *See, e.g.*, *Mickelson v. Chase Home*

*Finance, LLC*, No. C11–1445 MJP, 2012 WL 3240241, *5 (W.D.Wash., Aug. 7, 2012) (finding

the plaintiffs plausibly alleged that defendants "violated § 1692f(6) by trying to foreclose on a

debt when [they were] unaware if the debt was properly owed to Chase").

Responding to Purdy's allegations that they violated the FDCPA, Defendants argue that

(1) Defendants are not "debt collectors" under the FDCPA and, regardless, (2) Purdy fails to

allege any conduct in violation of the FDCPA.

    *1.* *Statutory Background*

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection

---

[13] Although this claim is asserted against all Defendants, the Court notes that ReconTrust, as the Trustee, initiated foreclosure action on behalf of BONY, to whom MERS assigned all beneficial interest under the Deed of Trust. Thus, the only entities connected to the foreclosure action were ReconTrust, who initiated the action as the Trustee for BONY, which held a beneficial interest under the Corporation Assignment of Deed of Trust. *See* Dina Aff., Exs. E & F.

**ORDER, REPORT, AND RECOMMENDATION - 14**

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C.A. § 1692.  In furtherance of this goal, the FDCPA requires and prohibits certain activities by "debt collectors" that are done "in connection with the collection of any debt."  15 U.S.C. §§ 1692c (prohibits certain communications), 1692d (prohibits harassment or abuse), 1692e (prohibits false or misleading representations), 1692f (prohibits unfair practices) & 1692(g) requiring validation of debts).

> 2.     *Defendants Are Not Debt Collectors Under the FDCPA*

Under the FDCPA, a debt collector is a person who uses an instrumentality of interstate commerce or the mails in a business which has the principal purpose of collecting debts, or who regularly collects debts owed to another.  *Fitzgerald v. PNC Bank*, 2011 WL 1542138, *3 (D. Idaho 2011) (citing 15 U.S.C. § 1692a(6)).  However, a debt collector does *not* include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  *Fitzgerald*, 2011 WL 1542138 at *3 (quoting 15 U.S.C. § 1692a(6)(F)).  This section focuses the inquiry on when BONY received "the beneficial interest in the note or the deed of trust."  *Rinegard-Guirma v. Bank of America NA*, No. 3:10–cv–01065–PK, 2012 WL 1110071, 5 -6  (D.Or., Apr. 2, 2012).  *See also Thepvongsa v. Reg'l Tr. Servs. Corp.*, No. C10–1045 RSL, 2011 WL 307364, at *7, n. 8 (W.D.Wash. Jan.26, 2011) (to determine whether the exemption in § 1692a(6)(F)(iii) applied, court analyzed whether plaintiff alleged that his debt was in default "prior to the Assignment to [trustee of the securitized trust] of the beneficial interest in the deed of trust"); *Salvato v. Ocwen Loan Serv.*, No.

**ORDER, REPORT, AND RECOMMENDATION - 15**

12-CV-0088 JLS, 2012 WL 3018051 (S.D. Cal. July 24, 2012) (explaining that the FDCPA distinguishes both the purpose for which the debt was assigned and the status of the debt at the time of assignment, making the critical inquiry whether the defendant acted like the original creditor and continued to service the Note or if it simply acquired the debt for collection).  15 U.S.C. § 1692a(6)(F) (excluding from the FDCPA's definition of "creditor" "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another").  In other words, "an assignee attempting to collect a debt on behalf of another is a "creditor" if the debt was not in default when assigned, but a 'debt collector' if the debt was in default when assigned."  *Salvato*, 2012 WL 3018051 at *5.

Accordingly, while the present possessor and/or owner of the Note is not of concern when analyzing a foreclosure under Idaho's Trust Deed Act, as interpreted by the Idaho Supreme Court, it may present an issue for FDCPA purposes.  The problem in the instant case is that there is no information in the record as to when BONY acquired its interest in the Note.  The Corporation Assignment of Deed of Trust was executed by a MERS representative on August 22, 2011, transferring all beneficial interest MERS held in the Deed of Trust to BONY.  Although this Assignment states that the beneficial interest in the Deed of Trust was transferred "together with the note", Defendants have acknowledged that the Note was transferred at a different time.  Defs.' Mem., p. 4 (Dkt. 12-2).  Unfortunately, there is nothing in the record explaining when BONY acquired the Note (or an interest in it).  If it acquired the Note or its interest in it on August 22, 2011, or anytime after Purdy was in default, then Purdy may be correct that BONY should be considered a debt collector under the FDCPA because the § 1692a(6)(F)(iii) exception would not apply. But just as there is nothing in the record in that regard, there is also nothing in

**ORDER, REPORT, AND RECOMMENDATION - 16**

the record that would suggest a favorable inference should be drawn in favor of Purdy on this point, so as to defeat the motion on that basis.

Regardless, the Court recommends that the District Court find Defendants have still failed to state a FDCPA claim because foreclosing on a deed of trust does not qualify as collecting a debt for the purposes of the FDCPA. The vast majority of district courts in this circuit, including a court in this district, have held that the FDCPA does not apply to actions taken by lenders or their agents in foreclosing on a lenders' security interest. *See Cherian v. Countywide Home Loans, Inc.*, 2012 WL 2865979, *4 (D. Idaho 2012) (concluding that "lenders and mortgage companies are not 'debt collectors' within the meaning of the FDCPA" and citing *Ines v. Countrywide Home Loans, Inc.*, 2008 WL 2795875, *3 (S.D. Cal. 2008) and *Williams v. Countrywide*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007) ("Mortgage companies collecting debts are not 'debt collectors.'")). *See also Cherian*, 2012 WL 2865979 at *4 ("Countrywide is the lender, U.S. Bank is the lender's successor, and Bank of America is the loan servicer – none of which qualify as 'debt collectors' under the FDCPA.") (citing *Caballero v. Ocwen Loan Serv.*, 2009 WL 1528128, at *1 (N.D. Cal. 2009)); *Fitzgerald*, 2011 WL 1542138 at *3 (stating that FDCPA's legislative history "suggests that a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt."); *Cromwell v. Deutshe Bank Nat'l Trust Co.*, No. C 11–2693 PJH, 2012 WL 244928 at *5 (N.D.Cal. Jan.25, 2012) (collecting cases); *Stewart v. Mortgage Elec. Reg. Sys., Inc.*, No. CV. 09–688–PK, 2010 WL 1054384, at *2 (D.Or. Feb.18, 2010) (because foreclosing on property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA, plaintiff fails to plead that the defendants were "collecting a

**ORDER, REPORT, AND RECOMMENDATION - 17**

debt"); *Ananiev v. Aurora Loan Servs.*, No. C 12-2275-SI, 2012 WL 2838689 * 3 (N.D. Cal. July 10, 2012) (collecting cases from district courts in the Ninth Circuit); *Walker v. Equity 1 Lenders Group*, No. 09cv325 WQH, 2009 WL 1364430 *7 (S.D. Cal. May 14, 2009) ("foreclosing on a trust deed is distinct from the collection of the obligation to pay money").  The Ninth Circuit has not yet ruled on the issue, but district courts often cite *Hulse v. Ocwen Fed. Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D.Or. 2002) for this proposition.  *Hulse*, 195 F. Supp. 2d at 1204 ("[The] activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA.).

Some district courts in this circuit have rejected the reasoning of *Hulse* and instead determined that the FDCPA may apply to non-judicial foreclosures.  Other Circuit Court of Appeals have held similarly.  *See, e.g.*, *Cromwell*, 2012 WL 244928 at *6-7 (collecting cases); *Kaltenbach v. Richards*, 464 F.3d 524, 528–29 (5th Cir. 2006) ("We therefore hold that a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests."); *Wilson v. Draper & Goldberg, P.L.L.C*, 443 F.3d 373, 376 (4th Cir. 2006) ("Wilson's 'debt' remained a 'debt' even after foreclosure proceedings commenced."); *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."); *Romeo v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt).

**ORDER, REPORT, AND RECOMMENDATION - 18**

Although the undersigned is instinctively drawn to some of the reasoning in these decisions, including the concern raised by one court that exempting foreclosure from the FDCPA would "create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." *Wilson*, 443 F.3d at 376, absent guidance from the Ninth Circuit, and relying on other decisions in this District, the Court will not recommend to the District Court that it diverge from the decisions of a majority of district courts in this circuit.  Instead, the Court recommends that the District Court conclude that foreclosure on a deed of trust is outside the scope of the FDCPA, in agreement with *Cherian*, 2012 WL 2865979.  *Cherian*, 2012 WL 2865979, *4 (agreeing that the act of foreclosing on a property pursuant to a deed of trust is not considered the collection of a debt under the FDCPA).

Specifically, it is recommended that the District Court find that foreclosing on a property is not the collection of a debt within the meaning of the FDCPA.  Additionally, ReconTrust, as the successor trustee and the entity that initiated the foreclosure, has no ownership interest in the Note and, therefore, is otherwise exempt from the FDCPA.  *See Cherian*, 2012 WL 2865979 at *4 ("ReconTrust, as the successor trustee, has no ownership interest in the Note and no claim can be stated against it under the FDCPA."); *see also Jacobson v. Balboa Arms Drive Trust No. 5402 HSBC Financial Trustee*, 2011 WL 3328487, *5 (S.D. Cal. 2011) (defining trustees as "merely 'middlemen' in the foreclosure process" while dismissing FDCPA claim).

Simply put, even considered most favorably to Purdy, his Complaint does not contain sufficient factual allegations to show that BONY or ReconTrust are debt collectors or have engaged in the collection of a debt within the meaning of the FDCPA.  For this reason, it is

**ORDER, REPORT, AND RECOMMENDATION - 19**

recommended that Purdy's FDCPA claim against the Defendants be dismissed.  However, the recommendation *on this issue only* is that the claim be dismissed with leave to amend.  *See Cherian*, 2012 WL 2865979*5 (*quoting Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009)— a case issued 2 months after Iqbal— to explaining that "[e]ven if a party has not requested leave to amend, a dismissal without leave to amend is improper unless it is beyond doubt that the complaint could not be saved by any amendment") (internal quotation marks omitted)).

**E.     Purdy is Not Entitled to Declaratory Relief**

Purdy seeks declaratory relief on the same theories he put forward for his quiet title and FDCPA claims.  He alleges that Defendants have no legal standing or authority to sustain a foreclosure and take possession of his home because none of the Defendants owns, holds, possesses, or otherwise has any legal interest in the note and debt that is secured by his home.  Compl. ¶ 33.  He also alleges that the default was improperly noticed and the foreclosure proceedings invalid.  *Id.* at ¶ 34; *see also id.* at ¶ 21.  For the reasons explained above, Defendants complied with Idaho's Trust Deed Act in initiating the foreclosure on Purdy's property and Purdy is not entitled to a declaratory judgment stating that the default was improperly noticed or the foreclosure proceedings invalid.

Purdy also seeks a declaration stating that any Defendant who may have a right to proceed with a foreclosure and sale must comply with state and federal laws and any applicable settlement agreement.  Such a declaration would be an advisory ruling because any future actions of Defendants are not at issue here.  If the Defendants do not comply with applicable laws and

**ORDER, REPORT, AND RECOMMENDATION - 20**

governing agreements in any actions taken in the future, that is the time that a case or controversy would arise.

Accordingly, the Court recommends that the District Court grant Defendants' request to dismiss Purdy's declaratory judgment action because it does not state a claim for relief.

## III.  RECOMMENDATION

Based upon the foregoing, IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss (Dkt. 12) be GRANTED and all claims *except* the FDCPA claim be dismissed with prejudice.  It is recommended that the District Court grant leave to amend the FDCPA claim.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition may "serve and file specific, written objections, not to exceed twenty pages" and the other party "may serve and file a response, not to exceed ten pages." Accordingly, any objection by Purdy shall be filed on or before **August 31, 2012**, any response by Defendants is due by **September 14, 2012.**

## IV.  ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Motion for Judicial Notice (Dkt. 13), and Plaintiff's Motion for Judicial Notice (Dkt. 15) are **GRANTED**.



DATED:  **August 17, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**ORDER, REPORT, AND RECOMMENDATION - 21**